| |
|---|
| **White v New York City Health & Hosps. Corp.** |
| 2025 NY Slip Op 30634(U) |
| February 24, 2025 |
| Supreme Court, Kings County |
| Docket Number: Index No. 510319/2019 |
| Judge: Consuelo Mallafre Melendez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part MMESP7 of the Supreme Court of the State of NY, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 24th day of February 2025.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
---------------------------------------------------------------------------X
LENA WHITE,

      Plaintiff,

  -against-

THE NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION and KINGS COUNTY HOSPITAL,

      Defendants.
---------------------------------------------------------------------------X
**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

**DECISION & ORDER**

Index No. 510319/2019
Mo. Seq. 2

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

<u>NYSCEF #s:</u> 42 – 57, 59 – 64, 65 – 68

Defendant New York City Health and Hospitals Corporation s/h/a The New York City Health and Hospital Corporation and Kings County Hospital moves (Seq. No. 2) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's Complaint in its entirety. Plaintiff opposes the motion.

Plaintiff commenced this action on May 8, 2019, asserting claims of medical malpractice and lack of informed consent in connection with treating Plaintiff's limb ischemia and gangrene.

Prior to the events at issue, Plaintiff was treated for bilateral leg ulcers and vascular disease in her lower extremities in November 2017.

On January 24, 2018, Plaintiff presented to Kings County Hospital emergency department with hypotension, shortness of breath, and labored breathing. Shortly after arrival, she went into cardiac arrest. She was successfully resuscitated after 11 minutes of advanced CPR measures and admitted to the ICU. She was

1

given Epinephrine during the resuscitation efforts and remained on vasopressors Levophed and Vasopressin, which were discontinued on January 26.

On January 26, a vascular surgery specialist documented ischemia (restricted blood flow) in Plaintiff's left hand with "dusky and demarcated" appearance, and no palpable radial or ulnar pulses. The vascular consult determined from an ultrasound that there was no occlusion or clot, and the cause was likely peripheral vascular disease exacerbated by the need for vasopressors. An orthopedic consultation was recommended for possible amputation.

On January 28, Plaintiff's left hand was noted to be cold and pulseless for over 72 hours. The orthopedic consult discussed the eventual need for left hand amputation with Plaintiff's family, but determined it was optimal to "wait for more complete demarcation" before performing said amputation.

Plaintiff was also seen during her admission by an infectious disease consult, renal consult for acute kidney injury, and neurology consult for disorientation. She was extubated on January 30 and transferred from the ICU to a regular medical floor on February 2. Orthopedics continued to monitor demarcation in her hand before moving forward with amputation.

The vascular surgeon and orthopedic consult also monitored Plaintiff's left lower extremity, which had palpable pulse but was cool to the touch and developed wound eschar/necrotic tissue.

Plaintiff was discharged to Rutland Nursing Home on February 22, 2018. She subsequently received outpatient treatment at non-party Kingsbrook Jewish Medical Center. She had a left below-the-knee leg amputation on May 11, 2018 and left radiocarpal hand amputation on May 16, 2018, which were noted to be due to gangrene and necrosis secondary to vasopressor medication.

Plaintiff alleges that Defendant, through its employees and agents at Kings County Hospital in January-February 2018, departed from good and accepted medical standards with respect to diagnosing, preventing, and treating the infection and gangrene in Plaintiff's extremities. Plaintiff further alleges that these departures were the proximate cause of Plaintiff's left leg and hand amputations.

2

[* 2]

In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department:

> "[A] defendant must make a prima facie showing either that there was no departure from good and accepted medical practice, or that the plaintiff was not injured by any such departure. Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden. Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions." (*Rosenzweig v Hadpawat,* 229 AD3d 650 [2d Dept 2024].)

However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023] [internal quotation marks and citations omitted]).

In support of this motion, Defendant submits an expert affirmation from Steve Salzman, M.D. ("Dr. Salzman"), a licensed physician certified in internal medicine and critical care medicine. He affirms that he has education and experience in treating patients with multiple comorbidities similar to Plaintiff, he has resuscitated patients in cardiac arrest, he has administered vasopressors, and he is familiar with the standard of care for assessing and treating vascular disease, limb ischemia, and gangrene.

Dr. Salzman opines that all treatment and care rendered to Plaintiff at Kings County Hospital from January 24, 2018 through February 22, 2018 was in compliance with the standard of care. Upon arrival, he notes that she was "in very critical condition" and that she had preexisting leg lesions and vascular disease. He opines that her intubation, initiation of CPR, and administration of Epinephrine (a vasopressor) was the standard of care required for a patient in cardiac arrest, and further opines that the use of Epinephrine saved her life. He further opines that it was the standard of care to continue administering Levophed and Vasopressin "to maintain her blood pressure at a safe level" until it stabilized, and without these medications she risked another cardiac arrest.

Dr. Salzman opines that proper and timely testing and consultations were undertaken throughout Plaintiff's hospitalization. Due to her elevated white blood cell count, he opines she was appropriately started on antibiotics and blood cultures were drawn, and she was later properly switched to Levaquin after those culture

3

returned negative.

Dr. Salzman also opines that Plaintiff's vascular and orthopedic consult appropriately determined that her left hand would require amputation. He opines that it was the standard of care to wait for demarcation and dry gangrene to develop, in order to determine how much of the hand or arm needed to be amputated. By doing so, he opines that she ultimately received an amputation "at the level of the wrist rather than further up the arm." Dr. Salzman notes that following her discharge from Kings County Hospital to the subacute rehab facility, Plaintiff refused to consent to amputation of the hand until May 2018.

Finally, Dr. Salzman opines that the treatment of her existing left leg ulcers was within the standard of care, and that she received proper wound care, dressing changes, and vascular consults.

Further, Dr. Salzman opines that no alleged departures from the standard of care proximately caused Plaintiff's claimed injuries. He opines that Plaintiff's compromised circulation in her left hand was an "unavoidable" result of her existing vascular disease and the vasopressors which were necessary during and after her resuscitation. He states that the inability for her left hand to be salvaged and the development of necrosis and dry gangrene were not due to any negligence, but an inevitable outcome of the restricted blood flow she suffered during her 11-minute code/cardiac arrest. He similarly opines that the ischemia in her left lower extremity was caused by her existing diabetes and vascular disease. He opines that this a condition was exacerbated by the 11-minute code and necessary administration of vasopressors, through no fault or negligence of the treating physicians. He opines there was no treatment that could have prevented her eventual amputations, and notes that the gangrene in her hand did not spread past its initial presentation days after her resuscitation. He concludes that "this outcome was fixed at the time of her arrest and need for vasopressors."

Based on the submissions, Defendant has established prima facie entitlement to summary judgment on the medical malpractice claim. Defendant's expert submission, based on his relevant expertise and evidence in the record, demonstrates that the Kings County Hospital physicians and staff did not depart from the standard of care in treating Plaintiff, and further demonstrates that no alleged departures from the standard of care were a proximate cause of her injuries. The burden therefore shifts to Plaintiff to raise a triable issue of fact.

4

[* 4]

In opposition to the motion, Plaintiff submits an expert affirmation from a licensed physician, Terance Baker, M.D. ("Dr. Baker"). Dr. Baker affirms that he is board-certified in emergency medicine, family medicine, and geriatric medicine.

In his affirmation, Dr. Baker restates the Plaintiff's allegations of malpractice and opines without detail that the movants departed from the standard of care in their "failure to recognize the change in Lena White's condition on a timely basis including skin color change; failure to consult and/or notify Ms. White's treating physician of the changes in her condition; failure to obtain the necessary vascular consultation on an emergent timely basis; [and] failure to provide appropriate necessary, timely interventions due to the change in Ms. White's condition."

Dr. Baker does not address proximate causation as to the patient's amputations or any other alleged injury, except in a conclusory sentence that the defendant's failure to observe skin color change "resulted in Ms. White developing gangrene."

At the outset, the movants argue in reply that Plaintiff's expert Dr. Baker has not properly laid a foundation to opine on the issues of this case. "[W]here a physician opines outside his or her area of specialization, a foundation must be laid tending to support the reliability of the opinion rendered" (*Hannen v Nici,* 230 AD3d 1118, 1120 [2d Dept 2024], quoting *Abruzzi v Maller,* 221 AD3d 753, 756 [2d Dept 2023]). In his affirmation of less than three pages, he states in a conclusory and vague fashion that he is "currently practicing or teaching in the areas of medicine applicable to this case" and "familiar with the standard of care in this case by virtue of my training, education, and experience of 25 years in the same field and/or related healthcare field as the physicians practiced when treating [incorrect name of plaintiff]." Even accepting the misnamed patient as a typographical error, the Court finds that this boilerplate paragraph does not establish a sufficient basis for Dr. Baker to opine on the allegations of this case or address the opinions asserted by the movant's expert Dr. Salzman. Plaintiff's expert has not laid any foundation to opine on the medical treatment specific to this action, including peripheral vascular disease, the use of vasopressors in emergency and critical care, ischemia, or gangrene.

Further, even if the Court accepts Plaintiff's physician as a qualified expert, the opinions rendered in his

5

[* 5]

expert affirmation are wholly conclusory and unsupported by any facts or citations to the medical record. Dr. Baker does not address and counter the opinions of the movant's expert in any detail, but merely restates the Plaintiff's allegations of malpractice in an enumerated list. "Mere conclusory allegations of malpractice, unsupported by competent evidence tending to establish the elements of the claim at issue, are insufficient to defeat summary judgment" (*Nelson v Lighter,* 179 AD3d 933, 934-935 [2d Dept 2020], citing *Alvarez v Prospect Hosp.,* 68 NY2d 320, 325 [1986]). "In order not to be considered speculative or conclusory, expert opinions in opposition should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record" (*Avgi v Policha,* 232 AD3d 838, 840 [2d Dept 2024] [internal quotation marks and citations omitted]). Plaintiff's expert does not provide any specific explanation of the standard of care or reasoning to counter the opinions of the movant's expert, Dr. Salzman. Dr. Baker states the defendant failed to provide a "timely" vascular consult or undertake "appropriate, necessary, timely interventions," but he fails to articulate what timeline or further interventions were required by the standard of care. Thus, the expert submissions from Plaintiff are conclusory and insufficient to defeat the motion for summary judgment.

Additionally, Plaintiff's expert fails to raise any issue of fact on proximate causation. Dr. Baker's affirmation is silent on the assertions of the movant's expert that Plaintiff's alleged injuries were an unavoidable result of her underlying vascular disease and her 11-minute cardiac arrest necessitating the use of vasopressors. As Plaintiff has not raised any genuine issue of fact to defeat the movant's prima facie showing of entitlement to summary judgment, the motion is hereby granted as to Plaintiff's medical malpractice cause of action.

On the allegation of lack of informed consent in Plaintiff's Complaint, this claim is inapplicable to the facts in the record. "A cause of action alleging lack of informed consent requires an affirmative violation of physical integrity in the absence of informed consent" (*S.W. v. Catskill Regional Med. Ctr.*, 211 AD3d 890, 891 [2d Dept. 2022], quoting *Pedone v Thippeswamy,* 309 AD2d 792, 793 [2d Dept 2003]). This cause of action does not apply to alleged injuries arising from a failure to timely diagnose and undertake treatment, nor does it apply to the risks and benefits of delaying or "postponing" a procedure (*see* Public Health Law § 2805-d [2]; *Samer v*

6

[* 6]

*Desai,* 179 AD3d 860, 864 [2d Dept 2020]). Further, a proximate causation link between the plaintiff's injuries and some alleged failure to disclose risks and alternatives is a necessary element of an informed consent claim (*Gilmore v Mihail,* 174 AD3d 686, 688 [2d Dept 2019]).

Here, Plaintiff's informed consent claim arises from an alleged delay in treatment ("failing to advise the plaintiffs of the hazards of the delay in performing certain procedures"), not an affirmative violation of physical integrity. Additionally, the movants' expert established prima facie that Plaintiff's injuries were an unavoidable result of her existing conditions and emergency resuscitation upon admission, and Plaintiff failed to raise a triable issue of fact on this claim. Therefore, based on the parties' submissions, summary judgment on the informed consent claim is also warranted.

Accordingly, it is hereby:

**ORDERED** that Defendant New York City Health and Hospitals Corporation's motion (Seq. No. 2) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's Complaint in its entirety, is **granted** and the action is **dismissed.**

The Clerk shall enter judgment in favor of NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, sued herein as THE NEW YORK CITY HEALTH AND HOSPITAL CORPORATION and KINGS COUNTY HOSPITAL.

This constitutes the decision and order of this Court.

ENTER.

_____

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

7